CATHARINE O'SHAUGHNESSY, Respondent, *v.* THE WORKING
WOMEN'S CO-OPERATIVE ASSOCIATION OF THE UNITED INSUR-
ANCE LEAGUE OF NEW YORK, Appellant.

(City Court of New York—General Term, May, 1894.)

Where the insured, in a policy of life insurance, warrants the truth of the
answers made by her to questions in her application, compliance with
such warranty is a condition of the contract of insurance, and it must
be assumed that any substantial deviation from truth in such answers
is material to the risk and renders the policy void.

Where the insured in such application stated that she had never had rheu-
matism, and the proofs of death show that she had had such disease
two years prior to her death, a direction of a verdict in favor of the
plaintiff is erroneous.

APPEAL from judgment in favor of the plaintiff, entered
upon a verdict directed by the court.

*Wm. E. Morris,* for respondent.

*W. B. Donihee,* for appellant.

McCARTHY, J. It is a pity that counsel do not prepare
their causes better and thus present more fully at the trial all
the facts relating to the case. This would relieve the judges
at General Term from much uncertainty, and prove more
satisfactory to counsel.

This case, either through neglect or some other cause, was
not properly presented by either side, and thus we are com-
pelled to act on very slight evidence indeed.

The plaintiff and defendant having each moved for a direc-
tion of a verdict, left the question of fact entirely to the
court. We can then only review on a question of law.

The defendant offered in evidence, among certain proofs
submitted to it by plaintiff in regard to the death of Catherine
Clifford, the following affidavit of the plaintiff:

"STATE OF NEW YORK, }
"*City and County of New York,* } *ss :*

"Catherine O'Shaughnessy, of the city of New York, being
duly sworn, says that she resides at 807 1st avenue in the city

of New York; that she well knew Catherine Clifford; she
was the wife of Patrick Clifford, who died in the city of New
York June 29th, 1869; for the last three years of her life
Catherine Clifford lived with me at this number; she died on
Monday morning, November 27th, 1893, at my residence in
this city.

"I know Dr. Jos. A. McLoughlin for about 5 years, and
knew him when he was a physician attending to Catherine
Clifford for rheumatism, inflammatory rheumatism, in 1891,
in the summer of 1891; he made one visit; she had rheuma-
tism in the hands.

"I don't know her age, only as she states it in her application.

her
"CATHERINE + O'SHAUGHNESSY.
mark

"Sworn to before me this 1st ⎱
day of December, 1893.   ⎰ .

"SIGMUND W. WOLFF,
"*Notary Public* (202), N. Y. Co."

By Exhibit A, the application which Catherine Clifford
signed when seeking this insurance and which forms a part of
the contract of insurance, she represents that she never had
any rheumatism, while by the affidavit of plaintiff it appears
that Mrs. Clifford had this disease in the summer of 1891.

The plaintiff, although in court, was not called to contradict
or explain this affidavit.

The answer to this question was a material one, and, under
the terms of the application and certificate, if false and untrue,
rendered the policy null and void.

Where the insured, in a policy of life insurance, warrants
the truth of the answers made by her to questions in her appli-
cation, compliance with such warranty is a condition of the
validity of the contract of insurance, and it must be assumed
that any substantial deviation from truth in such answers is
material to the risks and renders the policy void. *Dwight* v.
*Germania Life Ins. Co.*, 103 N. Y. 346; *Armour* v. *Trans-
atlantic Fire Ins. Co. of Hamburg, Germany*, 90 id. 451,
453.

GENOVESE *v.* MATELLI. **493**

Misc.] City Court of New York, May, 1894.

Other questions were asked: "Q. When last sick? A. Never. Q. Of what disease? A. None. Q. Name of physician who last attended member proposed, and when? A. None. Q. Has member ever had (if so, give particulars) rheumatism? A. No."

Also, 20th question: "Q. Has applicant withheld any material facts about member proposed? A. No."

The trial justice, with this evidence before him, erred in directing a verdict for the plaintiff, and, therefore, judgment must be reversed and a new trial granted, with costs to abide the event.

The judgment roll, which is on file in the clerk's office, has been read, examined and considered as a part of the case on appeal.

VAN WYCK, J., concurs.

Judgment reversed and new trial granted, with costs to abide event.